E-FILED
Wednesday, 17 October, 2012  08:14:04 AM
Clerk, U.S. District Court, ILCD

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

| | | |
|---|---|---|
| CARLOS SCOTT, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No.  10-cv-1273 |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |
| | ) | |

## O R D E R  &  O P I N I O N

This matter is before the Court on Respondent's Motion to Dismiss Petitioner's § 2255 Motion (Doc. 6). Petitioner filed a Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 on September 2, 2010, (Doc. 1), and amended his Motion on December 9, 2010. (Doc. 7). Petitioner also filed a response to Respondent's Motion to Dismiss (Doc. 9). For the following reasons, Respondent's Motion to Dismiss is granted, and Petitioner's § 2255 Motion is dismissed.

### PROCEDURAL HISTORY

Petitioner pled guilty to one count of Drug Trafficking Conspiracy on September 8, 2008, pursuant to a written plea agreement. (Plea Agreement and Stipulation of Facts, *United States v. Scott*, No. 06-cr-10090 (C.D. Ill. 2008) [hereinafter Plea Agreement]). The plea agreement contained provisions waiving the right to appeal or collaterally attack the conviction or sentence. (*Id.* at 4-6). Petitioner was sentenced on September 29, 2009, to twenty years in prison with ten years of supervised release. (Doc. 7 at 1). Petitioner did not appeal his sentence.

In Petitioner's § 2255 Motion, as amended, he raises three claims: 1) ineffective assistance of counsel based on a number of grounds, including inadequate communication, failure to investigate, inaccurate representations regarding his potential sentence, negotiation of an unfavorable plea deal, and failure to discuss the waiver provisions in Petitioner's plea agreement, 2) unknowing plea based on an alleged misrepresentation of the minimum sentence, and 3) failure to receive a downward departure at sentencing based on only playing a minor role in the conspiracy. (Doc. 7).

Respondent filed the instant Motion to Dismiss based on the waiver of Petitioner's right to collaterally attack his conviction or sentence contained in the plea agreement. (Doc. 6 at 1). Petitioner responded by arguing that he did not know what he was waiving, that his counsel was ineffective for failing to discuss the waiver with him and negotiating an unfavorable deal, and that the plea agreement was not knowing and voluntary based on his misunderstanding of what the sentence was to be. (Doc. 9 at 2-12).

## DISCUSSION

Waivers of the right to appeal or collaterally attack a conviction or sentence within a plea agreement are generally upheld and enforced. *Jones v. United States*, 167 F.3d 1142, 1145 (7th Cir. 1999). However, such waivers do not apply if the "plea agreement was involuntary, the district court 'relied on a constitutionally impermissible factor (such as race),' the 'sentence exceeded the statutory maximum,' or the defendant claims 'ineffective assistance of counsel in connection with the negotiation of [the plea] agreement.'" *Keller v. United States*, 657 F.3d 675,

681 (7th Cir. 2011) (quoting *Jones*, 167 F.3d at 1144–45). These arguments can be addressed by the district court because they would have the effect of invalidating the waiver and plea agreement. *See, e.g.*, *United States v. Rhodes*, 330 F.3d 949, 952 (7th Cir. 2003); *Jones*, 167 F.3d at 1145. As detailed below, Petitioner's collateral attack waiver is valid, the arguments that directly relate to the negotiation of the plea agreement are without merit, and the remaining claims are barred by the waiver.

A waiver of the right to appeal or collaterally attack a conviction or sentence will be enforced as part of the plea agreement "if its terms are 'express and unambiguous,' and the record shows that the defendant 'knowingly and voluntarily' entered into the agreement." *United States v. Chapa*, 602 F.3d 865, 868 (7th Cir. 2010) (citations omitted). To avoid the effect of his waiver, Petitioner must show that he did not know or understand the terms of the plea agreement, which requires an examination of "the language of the plea agreement itself and . . . the plea colloquy between the defendant and the judge." *Id.* In determining whether a petitioner understood and voluntarily accepted a waiver and plea agreement, the Court is entitled to rely on statements made under oath during the plea colloquy. *See United States v. Weathington*, 507 F.3d 1068, 1072 (7th Cir. 2007) ("Representations made by a defendant at a Rule 11 plea colloquy are presumed true.").

In the plea agreement, Petitioner purportedly acknowledges and waives his "right to collaterally attack the conviction and/or sentence" on any of the listed grounds or on the grounds that "the conviction and/or sentence was otherwise

subject to collateral attack." (Plea Agreement at 5). The terms of Petitioner's collateral attack waiver are express and unambiguous, with a clear heading and unequivocal language. Petitioner does not claim otherwise. Instead he argues that he did not know what a § 2255 motion was, and his attorney never discussed either his right to collaterally attack his sentence or the meaning of ineffective assistance of counsel with him, so he could not have knowingly waived his rights. (Doc. 9 at 2, 7). Petitioner argues that his plea agreement was involuntary and unknowing because he did not know the consequences or that his sentence would not be as low as he had been told it would be. (Doc. 7 at 9-10).

First, the argument that his plea was not knowing and voluntary is contradicted by the relief requested: Petitioner only seeks a reduction in his sentence, and does not wish to have his guilty plea vacated. (Doc. 1 at 25; Doc. 9 at 5). This severely undercuts any argument that the plea agreement was involuntary. *See United States v. Wenger*, 58 F.3d 280, 282-83 (7th Cir. 1995). In fact, it is not clear that the Court has the authority to consider Petitioner's claim that his plea is involuntary if he does not seek to have it vacated. *See*, *e.g.*, *United States v. Sura*, 511 F.3d 654, 655 (7th Cir. 2007); *Wenger*, 58 F.3d at 282-83 ("Waivers of appeal must stand or fall with the agreements of which they are a part. . . . Defendants must take the bitter with the sweet."). Resolving that doubt in Petitioner's favor, the Court considers his argument and finds that it is without merit.

The plea agreement language and Petitioner's plea colloquy testimony contradict the assertions that his plea and waiver were not knowing and voluntary. The plea agreement, signed by Petitioner, states that "[t]he defendant and the

defendant's attorney have reviewed Section 2255, and the defendant understands his rights under the statute. Understanding those rights, and having thoroughly discussed those rights with the defendant's attorney, the defendant knowingly and voluntarily waives his right to collaterally attack the conviction and/or sentence." (Plea Agreement at 5). Further, right above Petitioner's signature, the agreement states "I have read this entire Plea Agreement carefully and have discussed it fully with my attorney. I fully understand this Agreement, and I agree to it voluntarily and of my own free will." (*Id.* at 17). Regarding the potential sentence, the agreement accurately states the mandatory minimums applicable to Petitioner's case, and that the government could, in its sole discretion, move for a downward variance based on cooperation. (*Id.* at 3, 9). It contains no promises regarding the actual sentence he would receive. Even if both parties had mistakenly believed that Petitioner was eligible for a lower sentence, the plea agreement is not involuntary if the plea agreement made the potentially applicable mandatory minimum clear and the plea colloquy sufficiently covered the agreement's terms. *See Chapa*, 602 F.3d at 868-69.

Similarly, Petitioner's testimony from the plea colloquy demonstrates that his plea and collateral attack waiver were voluntary. During the plea colloquy, the undersigned engaged Petitioner in a detailed discussion of the elements of the crime to which he was pleading guilty, and Petitioner testified that he understood them. (Record of Proceedings, Change of Plea at 18-20, *United States v. Scott*, No. 06-cr-10090 (C.D. Ill. 2008) [hereinafter Tr.]). The Court also thoroughly explained the sentencing guidelines, how the sentence would be calculated, and that Petitioner

could face a mandatory life sentence based on prior convictions. (Tr. 6-12). The Court ensured that Petitioner understood that the sentence calculated by his attorney may not be the sentence imposed. (Tr. 12).

As for the plea agreement's terms, the Court highlighted the terms of the agreement and consequences of his plea, and Petitioner, under oath, stated on each occasion that he understood. (Tr. 7-20). Petitioner correctly notes that the Court did not specifically state that the right to collaterally attack his sentence or conviction would be waived. (Doc. 9 at 9). However, the Court referred Petitioner to the paragraph waiving his collateral attack rights in its discussion of his rights to challenge his sentence, though using the generic term "appeal rights" to apply to all of his rights to challenge the sentence or conviction. (Tr. 12). These rights were discussed as follows:

> Q.    Now, Section 3742 of Title 18 set forth the circumstances under which you can appeal. In fact, you and the Government can appeal any sentence imposed by this Court. But in your plea agreement, paragraph 10 and paragraph 11 at the bottom of page four and continuing on page five, you essentially are waiving your right to appeal from your conviction and sentence. Do you understand that's what you're doing, Mr. Scott?
> A.    Yes, sir.
> Q.    And these paragraphs indicate that your attorney has discussed with you your appeal rights, you fully understand them, and that you are knowingly and voluntarily waiving them. Can I assume that you're waiving your appeal rights in consideration of whatever benefits or concessions you see coming to you from having this plea agreement. Is that a fair presumption?
> A.    Yes, sir.
> Q.    And is anyone forcing you to waive your appeal rights?
> A.    No, sir.

(Tr. 12-13). Federal Rule of Criminal Procedure 11 requires the Court to "inform the defendant of, and determine that the defendant understands . . . the terms of any

plea-agreement provision waiving the right to appeal or to collaterally attack the sentence." Fed. R. Crim. P. 11(b)(1)(N). Although the Court did not use the specific words "collateral attack," the Court explained the essential effect of his waivers, in combination: that Petitioner would not be able to challenge his sentence or conviction. (Tr. 12-13). The Court attempted to simplify and explain the waivers, by putting them in terms Petitioner might better understand; use of the words "collateral attack" or "Section 2255" would be more likely to confuse than to enlighten. Though he may not have understood precisely the function of a § 2255 motion, or the distinction between an appeal and a collateral attack, the Court finds Petitioner understood that he was giving up his right to challenge his sentence and did so voluntarily. This satisfies the Rule 11(b)(1)(N) requirement, as the Court informed him of the terms, and determined that he understood the waiver.

Even in his own brief, Petitioner, in response to a question about prior collateral attacks, states, "[m]y lawyer did not inform me that I had this right. I thought I no longer had any rights."[1] (Doc. 1 at 15). This confirms the Court's determination that Petitioner understood the rights he was giving up, and did so voluntarily. The Court was, and remains, satisfied that Petitioner understood all of

---

[1] Apparently the only reason Petitioner believed he had the right to file a § 2255 motion was because the Court sent his fiancée a § 2255 form in response to a letter she sent to the Court inquiring about § 2255 relief. (*United States v. Scott*, No. 06-cr-10090, Doc. 42). That was simply a courtesy, to provide the requested form, done without review of the underlying claim; it was not meant to suggest that Petitioner would be successful if he filed a motion.

the terms in his agreement, including the consequences of waiving his right to collaterally attack his sentence, when pleading guilty.[2]

Petitioner cannot overcome his own testimony and the assertions in the signed plea agreement that he understood the rights he was waiving and was doing so voluntarily. He asserts that he "blanked out" after the prosecutor apparently said the sentence would be twenty years. (Doc. 7 at 10). He states he "was so nervous and confused everything was a blur. [He] couldn't think. [He] went through the motions. . . . [He] answered yes to everything." (Doc. 7 at 10). However, this was on the day he was sentenced, over a year after he entered his plea. (Doc. 7 at 10). To the extent Petitioner suffered the same confusion during his plea colloquy, that would have been his opportunity to alert the Court to his confusion. The purpose of the plea colloquy is to ensure the defendant understands the plea agreement and is voluntarily agreeing to it. *See Sura*, 511 F.3d at 657. The Court's inquiry and discussion with Petitioner before accepting his plea did just that. Thus, Petitioner's plea was knowing and voluntary, and the waiver is not invalid on this ground.

In addition to an argument regarding the voluntariness of the plea, an otherwise valid waiver of the right to collateral attack will not bar a § 2255 motion based on a claim of ineffective assistance of counsel that "relate[s] directly to the negotiation of the waiver." *Jones*, 167 F.3d at 1145. By contrast, a claim based solely on counsel's performance at sentencing is barred by the waiver. *Mason v.*

---

[2] Even if the Court had completely omitted reference to his appeal and collateral attack waiver, on the basis of the record showing he was aware of the waiver of his right to challenge his sentence and conviction, he would not be entitled to relief as he would not have been prejudiced by the omission. *See Peguero v. United States*, 526 U.S. 23, 24 (1999).

*United States*, 211 F.3d 1065, 1069 (7th Cir. 2000). Although Petitioner's ineffective assistance of counsel claim may relate closely enough to the negotiation of the waiver to be heard by the Court, it is without merit and does not invalidate his conviction or his collateral attack waiver. Petitioner argues that counsel "failed to negotiate results favorable to" him, which arguably comes within the exception for claims directly related to negotiation of the waiver. (Doc. 7 at 3). He also argues that he agreed to waive his right to appeal[3] based on a mistaken belief that his sentence would be ten to fifteen years, which his attorney apparently repeatedly confirmed would be the case. (Doc. 7 at 3-4).

To make a claim for ineffective assistance of counsel, Petitioner must show both that his counsel's performance was deficient, and that he was prejudiced by the deficiency such that the result would have been different without the error. *Strickland v. Washington*, 466 U.S. 688, 687-91 (1984). A claim for ineffective assistance for failure to explain the sentence or the collateral attack waiver fails the prejudice prong if the trial court discussed the terms and consequences of the plea agreement during the plea colloquy. *See, e.g.*, *United States v. Gilliam*, 255 F.3d 428, 433 (7th Cir. 2001) ("[A]n attorney's prediction or representation regarding the length of a client's sentence, if later proven to be inaccurate, will not necessarily render the client's plea unwitting or involuntary."); *Barker v. United States*, 7 F.3d 629, 633 (7th Cir. 1993) ("[E]ven if advice from Mr. Barker's trial attorney had led

---

[3] Although Petitioner argues he didn't know what a § 2255 motion was, so could not have waived such a right, that argument is addressed and rejected above, as he understood that his rights to challenge his sentence were waived. Thus, in construing his petition liberally, his statement regarding the waiver of right to appeal is taken to apply to collateral attack as well.

to his misunderstanding of the consequences of his guilty plea, any such confusion was cured by the trial court."). A petitioner who wishes to have a plea agreement's terms invalidated must show both that his attorney provided constitutionally ineffective assistance, and that "'there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial.'" *Barker*, 7 F.3d at 633 (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).

By pleading guilty, Petitioner avoided the mandatory life sentence on one count, and got the other charges against him dismissed. Petitioner testified during the plea colloquy that he was satisfied with the advice and counsel given by his attorney. (Tr. 4). There is no evidence that his counsel's performance in negotiating the deal he received, or in negotiating an agreement with the standard appellate and collateral attack waivers included, was deficient.

Even if the performance prong were satisfied, Petitioner does not allege sufficient prejudice to be entitled to relief on ineffective assistance of counsel grounds. Because the Court thoroughly discussed the plea agreement with Petitioner, and determined he understood the charges against him, the potential sentence, and the rights he was giving up by pleading guilty, any misinformation he may have received from his attorney would have been cured and continued reliance on that misinformation would be unreasonable. *See Barker*, 7 F.3d at 634. Petitioner does not even assert that he would have proceeded to trial had he been adequately informed regarding the plea agreement; instead, he asserts he would have simply had his attorney try to get a more favorable plea deal. (Doc. 9 at 13) ("If

I had known that 20 years was the *minimum* I would and could receive I would have insisted upon my lawyers vigorously negotiating a lesser sentence, period. Whether it would have been successful is unknown, *however*, obviously it was not done."). Petitioner does not demonstrate a reasonable probability that efforts to negotiate an even lower sentence would have been successful—given Petitioner's criminal history, it seems likely it would not have been. Thus, Petitioner's ineffective assistance of counsel argument is without merit, and the collateral attack waiver is not invalid on this ground either.

Therefore, for the reasons stated above, Petitioner's waiver is valid notwithstanding the arguments he makes to the contrary, namely his claims of involuntary plea and ineffective assistance of counsel. Petitioner's other claims for relief cannot be addressed on the merits because of the valid waiver. His third claim, that he was entitled to a downward departure based on his minor role in the conspiracy, is clearly prohibited by the waiver, as an attack on his sentence unrelated to the negotiation of the waiver. It is not an allegation that his sentence exceeded the statutory maximum, which would not be barred. *See Jones*, 167 F.3d at 1144. Many of Petitioner's arguments for ineffective assistance of counsel also do not go to the validity of the plea agreement or waiver, so they are barred. *See, e.g.*, *Mason*, 211 F.3d at 1069. Thus, Petitioner's Motion must be dismissed.

### CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11 of the Rules Governing § 2255 Proceedings, the Court "must issue or deny a certificate of appealability when it enters an order adverse to the applicant." A certificate of appealability may only be issued where the petitioner

"has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requirement has been interpreted by the Supreme Court to mean that an applicant must show that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Further, where the district court denies a petition on procedural grounds, a petitioner must make a showing that reasonable jurists "would find it debatable whether the district court was correct in its procedural ruling." *Id.* If the district court denies the certificate, a petitioner may request that a circuit judge issue one. Fed. R. App. P. 22(b)(1).

Based upon the record before it, the Court cannot find reasonable jurists would debate that Petitioner's claim is barred by the enforceable waiver contained in the plea agreement, to which Petitioner knowingly, freely, and voluntarily agreed. Accordingly, the Court declines to issue a certificate of appealability.

## CONCLUSION

For the foregoing reasons, Respondent's Motion to Dismiss (Doc. 6) is GRANTED, AND Petitioner's § 2255 Motion (Doc. 1) is DISMISSED WITH PREJUDICE. IT IS SO ORDERED.

CASE TERMINATED.


Entered this 15th day of October, 2012.


$\overline{\hspace{3cm}}$ s/ Joe B. McDade $\hspace{1cm}$
JOE BILLY McDADE
United States Senior District Judge